**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DENNIS LEE FRAMPTON, ) | |
| ) | CASE NO.  1:13-cv-02295 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE SARA LIOI |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Dennis Frampton ("Frampton") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

## I. Procedural History

On January 5, 2011, Frampton filed an application for POD and DIB alleging a disability onset date of October 9, 2009.  (Tr. 10.)  His application was denied both initially and upon reconsideration.  *Id*.

On March 9, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Frampton, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 10.) On July 5, 2012, the ALJ found Frampton was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 23-24.)  The ALJ's decision became

final when the Appeals Council denied further review.[1]

## II.  Evidence

*Personal and Vocational Evidence*

Age fifty-two (52) on his date last insured, Frampton was a "person closely approaching advanced age" under social security regulations.  *See* 20 C.F.R. § 404.1563(d).  Frampton has at least a high school education and past relevant work as a truck driver, building supply clerk, and warehouse worker.  (Tr. 22-23.)

## III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date

---

[1]  Frampton had filed a previous application for POD and DIB on March 31, 2008, which was denied initially and upon reconsideration.  (Tr. 10.)  On October 14, 2009, an ALJ issued a decision denying Frampton's application.  *Id*.  However, the ALJ found that Frampton had submitted new and substantial evidence that established a change in his condition and, therefore, the doctrine of *res judicata* did not apply.  *Id*.

[2]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Frampton was insured on his alleged disability onset date, October 9, 2009 and remained insured through December 31, 2011.  (Tr. 13.)  Therefore, in order to be entitled to POD and DIB, Frampton must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV.  Summary of Commissioner's Decision

The ALJ found Frampton established medically determinable, severe impairments due to degenerative disc disease in the cervical and lumbar spine, degenerative changes in the right acromioclavicular joint, post traumatic stress syndrome, depressive disorder, and chronic pain syndrome.  (Tr. 13.)  However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *Id*.  Frampton was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  (Tr. 15, 22.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Frampton was not disabled.  (Tr. 22-23.)

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### VI. Analysis

In his sole assignment of error, Frampton contends that the ALJ erred in determining that

4

he does not meet or medically equal Listing 12.04(C). (ECF No. 11 at 10-18.)

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in original); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.") Furthermore, it is Frampton's burden to produce evidence establishing that he meets or equals a listed impairment. *See, e.g., Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1981) (*per curiam*).

Listing 12.04 "Affective Disorders," states as follows:

> 12.04 *Affective disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in **both** A and B are satisfied, **or** when the requirements in C are satisfied.
>
> \* \* \*
>
> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
>    1. Repeated episodes of decompensation, each of extended duration; or
>
>    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
>    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, App'x 1 (emphasis added).

According to 12.00(C)(4), episodes of decompensation "are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or

5

maintaining concentration, persistence, or pace." The Listing further explains that such episodes may be demonstrated by "an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two.)" *Id*.

The ALJ in the case at bar determined that Frampton's severe impairments included depressive disorder and post traumatic stress disorder (Tr. 13), but ultimately found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06." (Tr. 14.) Frampton asserts that he satisfied the "A" criteria of Listing 12.04, but concedes that whether he meets the "B" criteria of the listing "may be at issue." (ECF No. 11 at 13.) To meet Listing 12.04, a claimant must satisfy *both* the "A" *and* "B" criteria *OR* the "C" criteria. As Frampton has focused exclusively on the "C" criteria in his argument, the Court purposely omits any discussion of whether the ALJ's finding with respect to the "A" and "B" criteria was supported by substantial evidence. With respect to the "C" criteria, the decisions states as follows:

> The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence of episodes of decompensation. There is no evidence that an increase in mental demands or change in environment would cause the claimant to decompensate. There is no evidence that the
> claimant is unable to function outside of a highly supportive living arrangement.

(Tr. 15.)

The ALJ also found that there were no episodes of decompensation. (Tr. 14.) Frampton does not point to any evidence of repeated episodes of decompensation of extended duration, nor does he suggest that he had a current history of one or more years of an inability to function outside a highly supportive living arrangement. (ECF No. 11.) As such, Frampton appears to confine his argument to alleging that the criteria of Listing 12.04(C)(2) was satisfied. (ECF No. 11 at 17.) The question, therefore, is whether substantial evidence in the record supports the ALJ's finding that the criteria of "C(2)" was not met.

As pointed out by the Commissioner in her brief, the ALJ's finding is supported by the opinions of two State Agency psychologists, Todd Finnerty, Psy. D. and Tonnie Hoyle, Psy. D. Both opinions were expressly relied upon by the ALJ in his Step Three determination. (ECF

No. 13 at 13, Tr. 14-15.) On March 9, 2011, Dr. Finnerty opined that the evidence does not establish the presence of the "C" criteria. (Tr. 110.) On August 24, 2011, Dr. Hoyle likewise opined that the evidence does not establish the presence of the "C" criteria. (Tr. 128.) Pursuant to Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (July 2, 1996), "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review." Furthermore, while ALJs are not bound by such opinions, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.*; *see also McGrew v. Comm'r of Soc. Sec.*, 343 Fed. App'x 26, 32 (6th Cir. 2009) (finding that the opinions of two State Agency physicians constituted substantial evidence supporting the ALJ's RFC determination);

Frampton argues that "[t]he question is whether there is other evidence in the record that supports a finding that a minimal increase in stress would cause Mr. Frampton's emotional condition to decompensate?" (ECF No. 11 at 14.) Frampton misconstrues the substantial evidence standard:

> This court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *Branham v. Gardner*, 383 F.2d 614, 626-27 (6th Cir. 1967). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Secretary of HHS*, 966 F.2d 1028, 1030 (6th Cir. 1992). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

*McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). "In other words, the evidence must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Sec. of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986) (internal quotation marks omitted); *accord*

7

*Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109 (6th Cir. 2010).

Because the Commissioner has a zone of choice, Frampton cannot establish legal error merely by pointing to evidence that he believes could have resulted in a different outcome. Here, Frampton simply points to evidence that he subjectively interprets as satisfying the criteria of Listing 12.04(C)(2).  Evidence of a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate" is required.

Frampton's first point is puzzling.  He argues that the RFC finding itself is evidence he would decompensate in a work setting because, in relevant part, it limits him to simple, routine, repetitive tasks not performed in a fast-paced environment with no more than occasional contact with the general public, coworkers, or supervisors.  (ECF No. 11 at 14.)  Frampton, however, cites no supporting law or regulation.  Such limitations are not uncommon in cases where a claimant suffers from mental impairments.  Absent any binding authority, this Court declines to find that an individual with such restrictions *per se* satisfies the requirements of Listing 12.04(C)(2).

Frampton also cites the opinion of clinical psychologist Richard C. Halas wherein the latter opines that Frampton's psychological and emotional problems are likely to become exacerbated in a normal work setting.  (ECF No. 11 at 14.)  It is unclear why Frampton believes this is evidence that he would decompensate in a work setting.  Notably, Frampton omits that, in the very same paragraph, Mr. Halas opined Frampton was only moderately impaired in his ability to withstand the stresses and pressures associated with most day-to-day work.  (Tr. 287.) Furthermore, as expressly noted by the ALJ, this opinion precedes the alleged onset date by over a year. (Tr. 20.)  Nonetheless, the ALJ found the opinion was consistent with the evidence as a whole.

Frampton also cites statements from independent psychological/psychiatric examiners Donald J. Tosi, Ph. D., Richard J. Duval Ph. D., and Robert T. Seagraves, M.D.; a treatment note by Farid Talih, M.D., from what appears to be Frampton's first visit with him; and treatment notes from treating psychologist Thomas Cassady, Ph. D.  (ECF No. 11.)  Frampton's brief

8

points to the following:

> According to Dr. Tosi's statement in his report of April 25, 2008 verifies that Mr. Frampton "...often feels overwhelmed and unable to cope with this problems. He is rigid and has trouble adapting to situations." (Tr. 364) Dr. Tosi also noted in October, 2008 that: "Mr. Frampton reports being so nervous that he has trouble dealing with everyday stress, pressure and demands." (Tr. 329) and that "Mr. Frampton reacts to his constantly changing conflicted thoughts and feelings, intense sudden rages, and depression lead to dramatic behavioral outburst, capricious 'up an down' mood swings, and dependency independence cycles...Maladaptive behavior usually results from poor judgment, withdrawal, and/or rebelliousness." (Tr. 330)
>
> Dr. Robert Seagraves noted in September, 2010 that: "The claimant is a 50 year old male wearing a baseball cap and sweat-soaked T-shirt with his anger barely under control...As stated above, he clearly met the symptoms of posttraumatic stress disorder as evidenced by his extreme anxiety driving from Ashtabula to the Cleveland area, as evidenced by his sweat-stained T-shirt, his having difficulty describing what happened and not wanting to go into any length about what had happened to him before. There is a report of difficulty leaving his own property, decreased interest in things, feeling of detachment, restricted affect and obviously his difficulty with anger, difficulty concentration, his hypervigilance and his severe insomnia. (Tr. 567) "Clearly he has extreme trouble controlling his anger which would make it difficult if he were closely supervised." (Tr. 568)
>
> His psychiatrist, Dr. Farid Talih noted in April of 2011 that: "He has frequent flashback, ruminations, re-experiences the trauma and has insomnia, anger, fatigue, and depression. Fluoxetine has been helpful, but he still has significant nightmares and flashbacks, as well as panic attacks...He is also not functioning at this point. He is at home. He feels he is anhedonic, depressed and sad." (Tr. 736)
>
> On June 6, 2010 Dr. Richard Duval stated that Mr. Frampton had a marked impairment in social functioning. As it related to the "C" criteria Mr. Frampton's ability to adapt to stress he wrote: "Mr. Frampton generally deals with life stressors by avoidance and emotional distancing[.] He still experiences a good deal of anger and moderate levels of anxiety, even when no particular stressor is imminent. When more threatening stressors occur - driving on a busier highway, being criticized, others being in charge - he becomes highly anxious and irritable/argumentative. He avoids conflict with his wife and family members by staying to himself for much of the time." (Tr. 887)
>
> Dr. Thomas Cassady has been treating Mr. Frampton for many years. His record repeatedly notes difficulty when stress is increased. In fact, he was treating him with stress management and he said in November 2009 that: "His PTSD-Anxiety symptom become intense when he's under stress. His anger appears poorly managed under stress." (Tr. 532) In May, 2010 he stated that they "...worked on Mr. Frampton's anxiety complaints and struggles (that he has) on a daily basis." (Tr. 538) In addition, he noted in June, 2010 that Mr. Frampton had a severe anxiety episode, almost collapsed and was sweating profusely and worried about his family after driving. (Tr. 610) Dr. Cassady repeatedly noted over several sessions that Mr. Frampton's adaptation to stress was assessed as - "Poor daily coping skills for stress, cannot work" (Tr. 789, 787, 785) with some improvement in December 2010 but still could not work. (Tr. 784).

(ECF No. 11 at 15-16.)

9

The Court fails to see how any of the above inherently conflicts with the ALJ's finding that the evidence fails to establish the criteria for Listing 12.04C(2). While there is evidence of mental impairments, impairments which the ALJ found to be "severe" at Step Two, it is unclear how any of these statements can be construed as establishing that Frampton suffers from a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." Though another ALJ might have concluded differently, none of the evidence cited plainly suggests that decompensation is likely if Frampton were subjected to a change in his environment. Though the stress and pressures of day to day work might arguably exacerbate Frampton's symptoms, decompensation, as defined in the regulations, also requires that such an increase be " accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 12.00(C)(4).

Essentially, Frampton is asking that the ALJ's reasonable interpretation of the evidence of record be disregarded and replaced with this Court's own interpretation that is in line with a finding of disability. That is not this Court's function. While this Court reviews the entire administrative record, it "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 2011 WL 1228165 at * 2 (6th Cir. 2011) (*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 2008 WL 162942 at * 6 (6th Cir. 2008) (stating that "it squarely is not the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.") Indeed, the Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected and the RFC was determined based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 194, 2004 WL 2567650 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 2009 WL 2514058 (6th Cir. 2009). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical

evidence before rendering a residual functional capacity finding." *Poe*, 342 Fed. App'x. 149, 2009 WL 2514058 at * 7.

Frampton also points to two Global Assessment of Functioning scores of 50. (ECF No. 11 at 17, *citing* Tr. 810, 861.) The first is from Farid Talih, M.D., dated April 13, 2011 and the second from an independent medical evaluation dated January 11, 2012. *Id*. It bears noting that the opinion of Mr. Halas referenced above contains a GAF score of 55. (Tr. 287.) The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Association, 4th ed revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0 - 100, with lower numbers indicating more severe mental impairments. A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See DSM-IV* at 34. Meanwhile, a GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See DSM-IV* at 34.

Frampton fails to explain how his GAF scores, even if credited, conflict with the ALJ's determination that he failed to satisfy the criteria of Listing 12.04(C)(2). Frampton's GAF scores were on the border of moderate to severe. It is unclear how such symptoms are demonstrative of predicted decompensation. Moreover, the Sixth Circuit Court of Appeals has explained that a "GAF score is not particularly helpful by itself" explaining that it is a "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Oliver v. Comm'r of Soc. Sec.*, 415 Fed. App'x. 681, 684 (6th Cir. 2011) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). The *Oliver* court explained that "[a] GAF score is thus not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues." *Id*.; *see also* 65 Fed. Reg. 50746, 50764-65 (2000) ("The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our

mental disorders listings.") It also bears noting that an update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* ("DSM-5") at 16 (American Psychiatric Association, 5th ed., 2013). As such, Frampton's GAF scores do not render the ALJ's determination that Frampton failed to meet or medically equal Listing 12.04 unsupported by substantial evidence.

Finally, the Court notes that the issue of whether a claimant meets or equals a listing and whether a claimant retains the residual functional capacity (RFC) to perform work are two separate issues. "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Sullivan*, 493 U.S. at 532. Frampton's brief focuses exclusively on the Step Three determination, and he has not clearly raised and developed any arguments alleging that the ALJ's decision was defective at any of the later steps in the sequential process. As such, while Frampton takes issue with the ALJ's rejection of Thomas Cassady, Ph.D.'s opinion that Frampton has been unable to work since September of 2008, the issue of whether Frampton meets the criteria of Listing 12.04(C) is separate and distinct from the issue of whether Frampton retains the RFC to engage in work. Furthermore, it is not this Court's function to develop additional arguments on a plaintiff's behalf. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). To the extent Frampton was attempting to raise a new argument in the last few sentences of his brief, such an argument is deemed waived. Also, Frampton's general statement that the opinions of his treating physicians should have been entitled to greater weight is irrelevant. Simply put, Frampton has not identified any treating source opinion that inherently

12

conflicts with the ALJ's Step Three finding.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White<br>United States Magistrate Judge

Date: September 17, 2014

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**